**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ken Gazian, et al., | No. CV-13-01312-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Wells Fargo Bank NA, et al., | |
| Defendants. | |

Plaintiffs Ken Gazian, Pierre Investments, Inc., and Aragadz Foods, Inc. d/b/a Devanche Jewelers have filed a motion for leave to file a second amended complaint. Doc. 59. Defendants Hubert Kelly and Kelly and Kelly, P.C. (collectively the "Kelly Defendants") have filed a motion to dismiss Defendant Wells Fargo Bank NA's cross-claim against them or, in the alternative, to bifurcate. Doc. 60. The motions are fully briefed. For the reasons that follow, the Court will deny the motion for leave to amend and deny the motion to dismiss or bifurcate.[1]

**I.     Background.**

Plaintiffs filed this action in Texas state court in October 2012, and it was removed to the United States District Court for the Northern District of Texas on October 26, 2012. Doc. 1. On June 28, 2013, Judge O'Connor ordered that the case be

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

transferred to this Court. Doc. 39. Plaintiffs filed their First Amended Complaint ("FAC") on October 28, 2013, asserting a number of claims against the Kelly Defendants and Wells Fargo arising out of an allegedly "fraudulent scheme orchestrated by the Kelly Defendants." Doc. 51, ¶ 9. Plaintiffs allege that they paid $80,000 to the Kelly Defendants for a transaction that the Kelly Defendants asserted was worth more than $45,000,000 and "would yield a return of $280,000" for Plaintiffs. *Id.*, ¶ 10. Plaintiffs allege that Wells Fargo "assured Plaintiffs on multiple occasions" that the transaction was valid," and confirmed that the Kelly Defendants had an account at Wells Fargo with "funds in excess of $280,000." *Id.*, ¶¶ 11, 14. Plaintiffs claim that they entered into an "Irrevocable Commitment" with the Kelly Defendants and Wells Fargo that set forth the terms discussed above. *Id.*, ¶ 12.

Plaintiffs assert that they were convinced by the Kelly Defendants in October 2011 to reinvest the $280,000 promised by the Irrevocable Commitment – rather than withdrawing it as scheduled – to "fund a $5,000,000 loan to purchase and renovate" an office tower in Dallas. *Id.*, ¶ 16. Plaintiffs also agreed to pay an additional $50,000 to fund the transaction. *Id.* Plaintiffs assert that on November 29, 2011, when they attempted to transfer the funds guaranteed by the Irrevocable Commitment to the Kelly Defendants, they "were informed by Wells Fargo that the accounts had been emptied and that Wells Fargo would not pay any amount to Plaintiffs pursuant to the Irrevocable Commitment." *Id.*, ¶ 21.

The day after Plaintiffs' FAC was filed, the Kelly Defendants filed a notice of settlement. Doc. 53. Wells Fargo answered Plaintiffs' FAC on November 15, 2013, and asserted a cross-claim for indemnity against the Kelly Defendants. Doc. 56. The Court dismissed Plaintiffs' complaint as to the Kelly Defendants on November 26, 2013. Doc. 58. Plaintiffs' motion for leave to amend and the Kelly Defendants' motion to dismiss or bifurcate followed on December 6, 2013. Docs. 59, 60.

**II.  Leave to Amend.**

The Court's case management order entered on August 29, 2013, established a

- 2 -

1 deadline for amending pleadings of October 28, 2013. Doc. 50 at 1. Plaintiffs' motion was filed on December 6, 2013, well after the deadline. *See* Doc. 59. Plaintiffs' motion, in effect, asks the Court to extend the deadline for amending pleadings.

A schedule established under Rule 16 of the Federal Rules of Civil Procedure may be extended only upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4). Rule 16's good cause standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 advisory committee notes (1983 amendment)).

Plaintiffs' motion does not address the good cause requirement, much less show good cause for extending the amendment deadline. The Court will therefore deny the motion.

**III. Cross-Claim.**

**A. Motion to Dismiss.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Kelly Defendants rely heavily on Plaintiffs' Second Amended Complaint ("SAC") as a basis for their motion to dismiss. They argue that "Plaintiffs have abandoned any allegations that Wells Fargo was a guarantor of the Irrevocable Commitment with their proposed Second Amended Complaint, and no party currently contends that Wells Fargo is obligated to pay any amount as a guarantor." Doc. 60 at 4. They also argue that the SAC effectively eliminates contract claims, leaving only tort claims against Wells Fargo, and that Wells Fargo cannot obtain indemnification for tort claims against the Kelly Defendants because Arizona and Texas have barred such claims. As noted above, the Court has denied Plaintiffs' motion for leave to file the SAC. The Kelly Defendants therefore cannot rely upon that pleading as the basis for their motion.

The Kelly Defendants' arguments regarding the abolishment of indemnification claims are deficient for several other reasons. They acknowledge that the abolition of joint and several liability in Texas and Arizona (and the related abolition of contribution actions, which they equate to abolishing indemnification in this case) has several exceptions, but they do not discuss the exceptions in any detail or explain why they do not apply here. The Kelly Defendants also argue that Texas law applies because the law applicable to a case does not change upon transfer of venue, but they do not explain why Texas law would have applied in this case before the transfer of venue. A choice of law analysis may be required in this case. In addition, the Kelly Defendants argue for the first time in their reply that Wells Fargo's cross-claim is deficient under the Supreme Court's decisions in *Twombly* and *Iqbal*. Doc. 66 at 4. The Court will not consider arguments raised for the first time in a reply brief. *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 843 n. 6 (9th Cir. 2004).

Finally, the Kelly Defendants argue that Texas' circuity of action doctrine would bar Wells Fargo's indemnity claim. Doc. 60 at 6. In addition to the unresolved question of whether Texas law applies, Wells Fargo points out that the cited authority would support the dismissal of *Plaintiffs' claims* based on the circuity of action doctrine, not

Wells Fargo's claims. Doc. 65 at 8; *see also In re El Paso Refinery, LP*, 302 F.3d 343, 349-50 (5th Cir. 2002) (noting that "Texas courts apply the circuity of action doctrine to extinguish a plaintiff's cause of action when, as a result of indemnification obligations or settlement agreements between parties, a plaintiff would end up indemnifying another party for its own original claim"). Wells Fargo is correct. This argument also does not provide a basis for dismissing Wells Fargo's claim. The Court will deny the Kelly Defendants' motion to dismiss.

### B. Motion to Bifurcate.

The Kelly Defendants argue in the alternative that the Court should bifurcate Wells Fargo's indemnity claims for a separate trial. Doc. 60 at 7. They argue that if they "were required to litigate the indemnity claims at this time, they would lose one of the most important benefits of settlement" because they "would be forced to incur all the costs of litigation solely on the basis of the dubious indemnity claims filed by Wells Fargo[.]" *Id.* The Kelly Defendants further argue that bifurcation would promote judicial economy because the Court "may not need to reach any indemnification claim." *Id.* at 8. Finally, the Kelly Defendants argue that Wells Fargo would not be prejudiced by bifurcation because the indemnification claims "cannot be litigated in any practical purpose until a judgment determines that Wells Fargo is without fault[.]" *Id.* at 9.

Wells Fargo counters that bifurcation is not appropriate because "[t]he determination of Wells Fargo's fault (if any) for Plaintiffs' losses and the indemnity liability of the Kelly Defendants to Wells Fargo will involve the same witnesses and documentary evidence." Doc. 65 at 11. Wells Fargo also contends that it would be prejudiced by bifurcation because it "would be forced to litigate the same issues twice, risk inconsistent verdicts or findings, and lose the efficiency of having the Kelly Defendants as parties, subject to the normal rules of discovery, in the Plaintiffs' action." *Id.* at 13.

The Kelly Defendants have neither demonstrated that bifurcating Wells Fargo's cross-claim would avoid prejudice, nor that it would promote convenience or judicial

economy.  As Wells Fargo notes, the witnesses and evidence required for their cross-claim are the same as those required for the underlying claim.  Bifurcating this case could result in discovery being conducted twice, once in the main action and a second time in the indemnification action.  In addition, legal issues and other motions to be resolved by the Court should be resolved only once, with all parties participating fully.

**IT IS ORDERED** that Plaintiffs' motion for leave to amend (Doc. 59) is **denied**.  The Kelly Defendants' motion to dismiss or, in the alternative, to bifurcate (Doc. 60) is also **denied**.

Dated this 18th day of February, 2014.

_____
David G. Campbell
United States District Judge