WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ken Gazian, et al., | No. CV-13-01312-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Wells Fargo Bank NA, et al., | |
| Defendants. | |

Defendant/Cross-Plaintiff Wells Fargo Bank NA has filed a motion for partial summary judgment. Doc. 108. The motion is fully briefed. The Court will deny the motion.[1]

Cross-Defendants Hubert Kelly and Kelly & Kelly, P.C. (the "Kelly Defendants") have also filed a motion for summary judgment. Doc. 110. The motion is fully briefed. The Court will grant the motion in part and deny it in part.

**I.    Background.**

Plaintiffs are Ken Gazian, Pierre Investments, Inc., and Aragadz Foods, Inc. d/b/a Devanche Jewelers. Gazian is a Texas resident and both Pierre and Devanche are Texas corporations, wholly owned by Gazian. Plaintiffs originally brought this action against both Wells Fargo and the Kelly Defendants based on an allegedly fraudulent scheme perpetrated by the Kelly Defendants. Plaintiffs allege that they transferred $80,000 to the

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Kelly Defendants' Wells Fargo bank account for the "purchase of securities allegedly posted on the London Stock Exchange." Doc. 101, ¶ 10. The transaction was purportedly represented "as having a total value in excess of $45,000,000," and Plaintiffs were led to believe their investment "would yield a return of $280,000." *Id.*

Plaintiffs allege that they "sought assurance from Wells Fargo" that the Kelly Defendants were legitimate business people and were in the process of putting together a large securities transaction. *Id.* Wells Fargo employees from a branch in Mesa, Arizona apparently represented to Plaintiffs "on multiple occasions that there was a transaction being put together for the purchase of the securities, that funds were present for the purchase of securities, and that Wells Fargo had undertaken numerous successful transactions" with the Kelly Defendants. *Id.*, ¶ 11. Plaintiffs claim that they entered into an "Irrevocable Commitment" with the Kelly Defendants and Wells Fargo that set forth the terms discussed above. *Id.*, ¶ 12.

Plaintiffs assert that they were convinced by the Kelly Defendants in October 2011 to reinvest the $280,000 promised by the Irrevocable Commitment – rather than withdrawing it as scheduled – to "fund a $5,000,000 loan to purchase and renovate the Park Plaza Tower," an office tower in Dallas. *Id.*, ¶ 16. Plaintiffs also agreed to pay an additional $50,000 to fund the transaction. *Id.* Plaintiffs assert that on November 29, 2011, when they attempted to transfer the funds guaranteed by the Irrevocable Commitment to the Kelly Defendants, they "were informed by Wells Fargo that the accounts had been emptied and that accordingly Wells Fargo would not transfer any amount to Plaintiffs pursuant to the Irrevocable Commitment." *Id.*, ¶ 21. Neither the Irrevocable Commitment nor the Park Plaza transaction was ever performed.

Plaintiffs reached a settlement with the Kelly Defendants in late 2013, and the Court dismissed the Kelly Defendants on November 26, 2013. Doc. 58. Wells Fargo filed an answer and a cross-claim for indemnity against the Kelly Defendants. Doc. 56. The Court declined to dismiss Wells Fargo's cross-claim. Doc. 73.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Analysis.

### A. Wells Fargo's Motion.

Wells Fargo moves for partial summary judgment on the issue of lost profits, arguing that the report of Plaintiffs' expert, Michael Van Amburgh, is based on flawed and inaccurate information. Doc. 108 at 3-4.

#### 1. Choice of Law.

Plaintiffs contend that Texas law should apply because this case was transferred from the Northern District of Texas. Doc. 112 at 3. But Plaintiffs also assert that "Arizona law is not materially different" on the issue of recovery for lost profits. *Id.* at 4. The Court need not decide a choice of law issue if the result would be the same under the laws of both states. *See Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1393 (9th Cir. 1985). Because Plaintiffs concede that Arizona and Texas law are "not materially different," the Court need not decide the choice of law issue at this time.

#### 2. Lost Profits.

Under both Arizona and Texas law, a party seeking to recover lost profits "must prove those profits by competent evidence with reasonable certainty." *VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 863 (Tex. Ct. App. 2001); *see also*

1  *Felder v. Physiotherapy Assocs.*, 158 P.3d 877, 887 (Ariz. Ct. App. 2007) ("The
2  requirement of 'reasonable certainty' in establishing the amount of damages applies with
3  added force where a loss of future profits is alleged.") (internal brackets, quotation marks,
4  and citation omitted).  Courts focus first on whether a plaintiff can establish the fact of
5  lost profits.  *Felder*, 158 P.3d at 887; *see also Pace Corp. v. Jackson*, 284 S.W.2d 340,
6  348 (Tex. 1955) ("[C]ourts draw a distinction between uncertainty merely as to the
7  amount and uncertainty as to the fact of legal damages . . . . uncertainty as to the amount
8  will not defeat recovery.").

9  "[W]here it can be proven that profits were lost, 'doubts as to the extent of the
10 injury should be resolved in favor of the innocent plaintiff and against the wrongdoer.'"
11 *Felder*, 158 P.3d at 887 (internal citation omitted).  "Reasonable certainty as to the
12 amount of lost profits can be shown by books of account, records of previous
13 transactions, or tax returns . . . or the 'profit history from a similar business operated by
14 the plaintiff at a different location.'"  *Id.* (quoting *Rancho Pescado, Inc. v. Nw. Mut. Life
15 Ins. Co.*, 680 P.2d 1235, 1245 (Ariz. Ct. App. 1994)); *see also VingCard*, 59 S.W.3d
16 at 863 ("[A]t a minimum, opinions or estimates of lost profits must be based on objective
17 facts, figures, or data from which the amount of lost profits can be ascertained.").
18 "Disagreements as to the evidence used to establish the amount of damages will go to the
19 'weight of the evidence.'"  *Felder*, 158 P.3d at 887 (quoting *Short v. Riley*, 724
20 P.2d 1252, 1255 (Ariz. Ct. App. 1986)).

21 Wells Fargo argues that Plaintiffs' only evidence is the testimony of "a purported
22 expert . . . who based his opinion almost entirely on a brochure created by unvetted
23 sources for the purpose of marketing the office building and billboard."  Doc. 108 at 3.  It
24 further argues that Gazian has no prior "experience in owning or operating an office
25 building, billboard, or retail jewelry store," and that Plaintiffs do not "offer any future or
26 even potential contract for any of the business ventures [they] allege would have existed
27 following the Park Plaza transaction."  *Id.*  Wells Fargo also points out that Plaintiffs do
28 not "offer historical data from [Gazian's] current business ventures to show that he can

1  successfully run a profitable business, let alone a business similar to that which was to be
2  operated" at the Park Plaza Tower.  *Id.*  Wells Fargo spends a significant portion of its
3  motion and statement of facts challenging the information relied on by Plaintiffs' expert,
4  Van Amburgh.  It argues that Van Amburgh erroneously relied on revenue figures for the
5  Park Plaza Tower contained in a marketing memorandum without independently
6  verifying them (Doc. 108 at 10), "improperly relies on uncorroborated assertions from
7  Gazian on what he believed he could make in his new business ventures" (*id.* at 11), and
8  inexplicably modified the vacancy rates for the Park Plaza tower (*id.* at 10-11).  Wells
9  Fargo finally argues that the lost profits alleged by Plaintiffs are speculative because "the
10 funding of Park Plaza may or may not have happened[.]"  *Id.* at 13.

11     Wells Fargo's arguments do not provide a basis for summary judgment.  Wells
12 Fargo does not challenge the qualifications of the expert or the admissibility of his
13 report.[2]  Gazian's inexperience managing office buildings, the allegation that he has
14 never run a profitable business, and questions concerning the sources of information or
15 methods used in Van Amburgh's calculations certainly are matters on which Wells Fargo
16 may cross-examine Plaintiffs and Van Amburgh at trial.  But the Court cannot say as a
17 matter of law that Plaintiffs can recover no lost profits based on the expert report.  The
18 issues raised by Wells Fargo go to Van Amburgh's credibility and the reliability of his
19 opinion, matters that must be resolved by the jury.[3]

---

[2] In its reply, Wells Fargo states that "[t]here is no requirement for Wells Fargo to move to exclude Van Amburgh's testimony because the reasons to exclude the testimony are also the reasons that Wells Fargo is entitled to summary judgment."  Doc. 115 at 11. To the extent this is a request to exclude Van Amburgh's report, the request is denied. The Court will not consider arguments raised for the first time in a reply brief.  *See Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 843 n.6 (9th Cir. 2004).

[3] Wells Fargo appears to have overlooked a critical issue.  Plaintiffs' claims against Wells Fargo are based on allegations that Wells Fargo failed to inform them that the Kelly Defendants were not reputable and that their transaction with Plaintiffs was likely fraudulent.  Plaintiffs pursued the purchase of the Park Plaza Tower because they allegedly relied on false representations made by the Kelly Defendants and the reassurance provided by Wells Fargo.  Plaintiffs claim they lost the ability to consummate the transaction because of Wells Fargo's actions, but if Wells Fargo had done what Plaintiffs claim it should have done – told Plaintiffs that the Kelly Defendants were shady characters and their securities transaction was likely a scam – Plaintiffs

- 5 -

**B.     The Kelly Defendants' Motion.**

The Kelly Defendants argue that "Wells Fargo cannot seek indemnity against the Kelly Defendants for Wells Fargo's own alleged bad acts." Doc. 110 at 1. They note that Plaintiffs' second amended complaint "removes all claims of any kind for derivative or vicarious liability on the part of Wells Fargo," and argue that "Wells Fargo cannot pass its obligations onto the Kelly Defendants and, as a matter of law, it does not have an indemnity claim against the Kelly Defendants." *Id.* at 3.

Wells Fargo argues that there are "four types of indemnity in Arizona" and contends that several apply here. It argues first that indemnity can be implied from the terms of a contract or "when justice demands there be the right." Doc. 114 at 3 (citing *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 979 (Ariz. Ct. App. 1986)). Next, Wells Fargo argues that Plaintiffs' allegations against it "stem[] from contracts between Wells Fargo and the Kelly Defendants, or allegedly among all parties, which may give rise to a claim for implied contractual indemnity." Doc. 114 at 4. Wells Fargo further argues that a "right of contractual indemnity may arise when an agent, through no wrongdoing of his own, incurs liability for an act performed on behalf of a principal." *INA Ins.*, 722 P.2d at 979. Wells Fargo, however, does not specifically identify or produce any contracts that would support either a claim for implied contractual indemnity or the existence of an agency relationship.

Wells Fargo also points to exceptions to the general rule that there is no indemnity among joint tortfeasors when it is "equitable to shift liability for the loss from one joint tortfeasor to another," specifically, "when the party seeking indemnity is not at fault" or when an agent "becomes liable in tort, without any fault of his own, simply by following the instructions of another agent of the principal." *Cella Bar Assocs., Inc. v. Cohen*, 868

---

would not have entered into the Park Plaza Tower transaction and would never have earned the profits alleged in their expert report. Stated differently, Wells Fargo's alleged wrongdoing did not cause the Park Plaza Tower to fail and Plaintiffs to lose profits; it caused Plaintiffs to enter into a fraudulent transaction that had no chance of profits. Thus, Plaintiffs may have lost their investment, but they did not lose profits because of Wells Fargo's actions. Because Wells Fargo did not make this argument in its motion for summary judgment, however, the Court cannot grant summary judgment on this basis.

P.2d 1063, 1068-69 (Ariz. Ct. App. 1994).  It contends that a material issue of fact still exists as to the existence of these exceptions to the general rule.  Again, however, Wells Fargo has not identified any evidence to support the existence of any of these exceptions to the common law rule that there is no indemnity among joint tortfeasors, nor has it explained how any of the exceptions may be applicable here.

Wells Fargo also argues that "Plaintiff's unproven allegations do not control Wells Fargo's right to indemnity," and cites to *INA Insurance* for support.  Doc. 114 at 5.  *INA Insurance* held that allegations in the complaint of "independent wrongdoing of [the defendant] do not control [the defendant's] right to indemnity."  722 P.2d at 982.  Wells Fargo uses this language to argue that its right to indemnity from the Kelly Defendants is not controlled by Plaintiffs' allegations, which only assert claims against Wells Fargo.  Doc. 114 at 5-6.  But the plaintiff in *INA Insurance* relied on a specific contractual indemnity provision in asserting its claim for indemnity.  722 P.2d at 978.  Wells Fargo identifies no such contractual provision here.

Wells Fargo finally argues that A.R.S. § 44-2003(A) provides for joint and several liability for "any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale or purchase" of securities.  Doc. 114 at 6.  But A.R.S. § 44-2003(A) applies to "action[s] brought under § 44-2001, 44-2002 or 44-2032," and Wells Fargo offers no explanation as to whether any of these provisions are relevant here.  Section 44-2003(B) states that "[a]ny covered person against whom a final judgment is entered in a private action is jointly and severally liable for damages only if the trier of fact determines that the covered person recklessly or knowingly committed a violation of this chapter."  A.R.S. § 44-2003(B).  Sections 44-2003(C) and (D) provide that a covered person "is liable solely for the portion of the judgment that corresponds to the percentage of responsibility of the covered person," and that the jury shall make findings "for each covered person and any other person the parties claim to have caused or contributed to the loss incurred by the plaintiff, including any person who has entered into a settlement with the plaintiffs[.]"  A.R.S. § 44-2003(C)-(D).

Neither of the parties has explained how this provision may apply here. Plaintiffs assert a claim against Wells Fargo under the Arizona Securities Act, A.R.S. § 44-1801 *et seq.*, which includes section 44-2003. *See* Doc. 101, ¶¶ 78-84. The Kelly Defendants' only arguments on the subject are that Wells Fargo did not raise this statute in their cross-claim, that Plaintiffs have not alleged joint and several liability, and that Wells Fargo's claim for contribution is premature. Doc. 116 at 3. But they offer no argument or authority to explain why this provision does not entitle Wells Fargo to indemnity. In light of the poor briefing on this issue, the Court will not decide at this stage whether Wells Fargo is foreclosed from seeking indemnification from the Kelly Defendants under § 44-2003. Accordingly, the Court will not enter summary judgment on this basis.

In sum, the Kelly Defendants' motion is quite sparse and simply states that Wells Fargo does not have an indemnity claim against them, but such a motion imposes on Wells Fargo the duty to "designate specific facts showing that there is a genuine issue for trial" on the issue of indemnity. *See Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). Wells Fargo has produced no evidence to create an issue of fact as to common law or contractual indemnity from the Kelly Defendants. Accordingly, the Court will grant the Kelly Defendants' motion for summary judgment as to contractual and common law indemnity, but will deny the motion as to § 44-2003 of the Arizona Securities Act due to the Kelly Defendants' inadequate briefing.

**IT IS ORDERED**:

1. Wells Fargo's motion for partial summary judgment (Doc. 108) is **denied**.
2. The Kelly Defendants' motion for summary judgment (Doc. 110) is **granted in part** and **denied in part** as set forth above.
3. Wells Fargo's request for oral argument (Doc. 118) is **denied**.
4. The Court will set a final pretrial conference by separate order.

Dated this 18th day of September, 2014.

_____
David G. Campbell
United States District Judge